UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

       - v. -                  :     S1 13 Cr. 351 (JSR)

JOVER NARANJO, and                :
LUPERIO NARANJO, SR.,             

                  :

           Defendants.

- - - - - - - - - - - - - - - - - - x

**SUPPLEMENTAL SENTENCING MEMORANDUM OF THE UNITED STATES**

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Brian A. Jacobs
Brent S. Wible
Assistant United States Attorneys
   -Of Counsel-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

      - v. -                              :          S1 13 Cr. 351 (JSR)

JOVER NARANJO, and                          :
LUPERIO NARANJO, SR.,
                                            :
       Defendants.

- - - - - - - - - - - - - - - - - - x

**SUPPLEMENTAL SENTENCING MEMORANDUM OF THE UNITED STATES**

The United States of America, by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, Brian A. Jacobs and Brent S. Wible, Assistant United States Attorneys, of counsel, respectfully submits this supplemental memorandum in response to the supplemental sentencing submissions of Jover Naranjo and Luperio Naranjo, Sr., dated May 15, 2014, and April 25, 2014, respectively. In these submissions, the Naranjos argue that "the Court should find that the Naranjos do not owe any restitution, and that the forfeiture amount should be no more than $34,613.33." (Docket Entry 55 at 1). For the reasons set forth below, the Naranjos' arguments have no merit and should be rejected. The Court should impose restitution in the amount of $614,754.47 and forfeiture in the amount of $519,997.46. Proposed orders are enclosed.

2

A. **The Court Should Impose Restitution in the Amount of $614,754.47**

The Naranjos contend that the Court should not order them to pay restitution. (Docket Entry 55 at 4-5). Specifically, they argue that (1) a restitution order is not warranted because an administrative law judge with the Department of Labor ("DOL") has already ordered $656,646.93 held in a Reserve Fund (to which the general contractor, Lettire Construction ("Lettire") contributed $1.4 million) to be paid to the workers, and the Mandatory Victim Restitution Act ("MVRA") precludes victims from receiving an amount greater than their actual losses; and (2) the workers do not qualify as victims under the MVRA. The Naranjos' arguments have no traction and should be rejected.

Contrary to the Naranjos' claim, the availability of other funds to pay the workers does not relieve the Naranjos of their restitution obligation. The Naranjos are correct that the MVRA provides that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later received" as compensation for the same loss in a civil proceeding. 18 U.S.C. § 3664(j)(2)(A). The Naranjos fail to acknowledge, however, that the MVRA also provides that where a victim has received compensation with respect to a loss — including via a civil proceeding — "the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation."

3

*Id.* § 3664(j)(1). Thus, here, if the workers are in fact paid from the Reserve Fund, the Naranjos will still be required to pay restitution, albeit to the entities that contributed to the reserve fund (*i.e.*, Lettire) rather than to the workers. *See id.*; *United States* v. *Rizk*, 660 F.3d 1125, 1137 (9th Cir. 2011) (directing the district court to order defendant to pay restitution, in part, to the victims and, in part, to insurer that had compensated victims).

Nor is there any force to the Naranjos' claim that the workers are not entitled to restitution because they are co-conspirators rather than victims. The assertion that the workers conspired with the Naranjos to violate the prevailing wage laws is patently incorrect. The workers were not participants in the Naranjos' fraud. Indeed, the suggestion that the workers agreed with the Naranjos to make misrepresentations to the DOL (and its New York City counterpart) so that they would be paid far less than the prevailing wage is bizarre. At worst, the workers joined with the Naranjos in violating laws that preclude employers from hiring undocumented immigrants and paying employees off the books. But this hardly means that the workers shared the Naranjos' intention to violate the prevailing wage laws through fraud. *Cf.* *United States* v. *Ojeikere*, 545 F.3d 220, 222-23 (2d Cir. 2008) (stating that the principle that a defendant may not be ordered to make restitution to a co-conspirator is limited to situations in which the victims are involved in the offense of conviction or at least

4

had intentions that were "*in pari materia* with those of the defendant"). Had the Naranjos complied with the prevailing wage laws, the workers would have received two to three times the wages the Naranjos actually paid them. They are therefore victims and are entitled to restitution.[1]

Accordingly, the Court should order the Naranjos to pay restitution in the full amount of the underpayment (that is, $614,754.47), with the proviso that, to the extent the workers are compensated with payments from the Reserve Fund (that is, Lettire), the workers should not recover more than their actual losses and the Naranjos should accordingly be required to make restitution to the entities that contributed to the Reserve Fund, in accordance with Section 3664(j)(1) of Title 18, United States Code. A revised proposed order is enclosed.

B. **The Court Should Impose Forfeiture of $519,997.46**

The Naranjos do not appear to contest the loss amount of $656,646.93. (Docket Entry 55 at 2). The Naranjos argue, however,

---

[1] This case is quite different from *United States* v. *Archer*, 671 F.3d 149 (2d Cir. 2011), upon which the Naranjos rely.  In that case, aliens without lawful status in the United States paid a corrupt immigration lawyer to file fraudulent immigration applications on their behalf.  The Second Circuit held that because these aliens were participants in the charged visa fraud conspiracy, they were not entitled to restitution for the legal fees they paid the attorney in order to file false applications for them.  *United States* v. *Archer*, 671 F.3d at 169-71.  Here, the workers (unlike the aliens in *Archer*) neither caused the Naranjos to make false filings with the DOL (and its local government counterpart) nor benefited from the defendants' prevailing-wage-fraud scheme.  *Archer* is thus inapposite.

that the amount subject to forfeiture should be substantially lower because that amount, they argue, should be calculated by deducting their "direct costs" from their "gross proceeds." (Docket Entry 55 at 5). It is true that the relevant statute provides that "proceeds" means "the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services." 18 U.S.C. § 981(a)(2)(B). The statute also makes clear, however, that the burden of proof is on the Naranjos "with respect to the issue of direct costs." Id.

The Government agrees that the Naranjos have met their burden of demonstrating $313,939.54 in direct costs, which are the wages the Naranjos actually paid their workers, according to the DOL's own calculations. (See Docket Entry 55 at 2). Accordingly, the Government agrees that this amount should be deducted from the Naranjos' gross proceeds of $833,937, which results in an amount of $519,997.46 subject to forfeiture. The Naranjos have not carried their burden of demonstrating any other direct costs, however, and accordingly, the Court should order forfeiture in the amount of $519,997.46.

The Naranjos assert that their direct costs also include (1) the wages they paid to workers from February to May 2010, (2) expenses for carting and dumping, and (3) wages paid to defendant Luperio Naranjo Sr. for his work on the job site. None of

these amounts should be deducted from the forfeiture amount, however, because the materials the Naranjos have submitted to support their argument do not meet their burden.

### 1. No Deduction Should Be Made for Additional Wages

First, the Naranjos claim they paid $209,446.29 to workers between February and May 2010 to complete the project and that this amount should be deducted from the forfeiture as a direct cost. (Docket Entry 55 at 2). In support of this claim, they rely on Exhibit B to their supplemental sentencing submission, which contains copies of "Weekly Payrolls." This exhibit, however, does not carry the Naranjos' burden.

As an initial matter, it is not at all clear that the documents included in Exhibit B are authentic, because the Naranjos have submitted only the first page of each document. By way of comparison, the Certified Payrolls introduced as trial exhibits all contained a second page, reflecting Jover Naranjo's signed affirmation that the information on the first page was true and accurate. (*See, e.g.*, GX 201-233). The Naranjos have declined to include any such affirmations in Exhibit B, and have instead included only the first page of each weekly payroll. Nor have they suggested any witness who could authenticate these documents.

Further, and more importantly, the trial evidence casts doubt on the accuracy of the information reflected in Exhibit B. For example, according to several of the Weekly Payrolls in Exhibit B,

7

Luperio Naranjo Sr. himself worked as a "Demolition Labor[er]," doing "Tier(A)" work, that is, the most physically taxing demolition work. But at trial, abundant evidence established that Luperio Naranjo Sr. never did demolition work, even though most of the Certified Payrolls introduced at trial, like those in Exhibit B here, falsely listed him as a "Demolition Labor[er]," doing "Tier(A)" work. (*See, e.g.*, Tr. 47, 127, 189; GX 201-233). In fact, his counsel acknowledged in summation that he did not do demolition work. (Tr. 564). Thus, it appears highly unlikely that Luperio Naranjo Sr. did the demolition work reflected in Exhibit B.

For another example, several of the Weekly Payrolls in Exhibit B show that Edgar Avila was doing "Tier(B)" demolition work – hauling debris – and that Luperio Naranjo Jr. was doing "Tier(A)" work. But the evidence at trial established that Avila was a supervisor on the job site, not a laborer, and that Luperio Naranjo Jr. was a foreman on other job sites, and not someone who did demolition work himself, let alone at the job site in this case. (*See, e.g.*, Tr. 47, 60, 127-28, 140, 189-90, 225, 228, 268-69).

At trial, the fact that Luperio Naranjo Sr., Luperio Naranjo Jr., and Edgar Avila were falsely listed as demolition laborers on the Certified Payrolls was part of the Government's evidence demonstrating the defendants' fraudulent scheme. It appears that the documents in Exhibit B contain some of the same fraudulent misrepresentations regarding these individuals there were contained

in the trial exhibits, and as a result, standing alone, the documents in Exhibit B are entitled to no weight. They are particularly entitled to no weight where the Naranjos have submitted only incomplete versions to the Court, and have offered no witness to authenticate them. Accordingly, the Naranjos have not carried their burden with respect to demonstrating any additional wages paid.

2. No Deduction Should Be Made for Carting and Dumping Costs

Second, the Naranjos claim they should be credited for the direct cost they incurred "to remove the debris, a task [Enviro & Demo Masters Inc. ("Enviro")] subcontracted to Yankee [Carting Inc.] at a total cost of $223,054.04." (Docket Entry 55 at 3). In support of this claim, they rely on Exhibit D to their sentencing submission and a Compact Disc that they subsequently submitted to the Court. But these materials contain nothing more than bills from Yankee Carting Inc. ("Yankee") to Enviro, bills from various dumps to Yankee, and a spreadsheet summarizing these materials. These materials are not sufficient to carry the Naranjos' burden.

As a general matter, the Naranjos have not proposed any witness who could explain what these documents actually are. This failure is particularly notable because the evidence at trial demonstrated that the Naranjos went to great lengths to falsify paperwork – including creating fake checks by copying and pasting signatures and other information (*see, e.g.*, GX 204, 205, 501, 509,

514) and inserting false information onto Certified Payrolls (*see,*
*e.g.,* GX 201-233) — in order to accomplish their fraudulent scheme.
Even accepting the documents at face value, however, they are still
deficient. The bulk of the documents appear to be bills from
various dumps to Yankee, but there is nothing on the face of these
documents indicating that they have any connection to the project
at issue in this case. The rest of the documents are bills from
Yankee to Enviro, but Yankee is the Naranjos' own company and does
not appear to have any employees other than the Naranjos
themselves. (*See, e.g.,* Tr. 320 (employees are all paid through
Enviro, not Yankee Carting or Gladiator)). The Naranjos' alleged
payments to themselves for alleged carting costs should not be
deducted from their forfeiture, even if the documents could be
authenticated. Standing alone, these materials do not carry the
Naranjos' burden of establishing any additional direct costs and,
according, no deduction should be made for alleged carting and
dumping costs.

### 3. No Deduction Should Be Made for Luperio Naranjo Sr.'s Wages

Third, and finally, the Naranjos claim that Luperio Naranjo
Sr.'s wages of $51,946.80 for his work on the job site in this case
should be deducted from the forfeiture as a direct cost. But the
evidence at trial showed that Luperio Naranjo Sr.'s primary
responsibility on the job site was to sit in his van and alert the
workers inside the job site if any federal, state, or city

investigators showed up so that the workers could hide. (*See, e.g.*, Tr. 52-53, 94, 130, 189, 230). It is not at all clear what, if any, legitimate work Luperio Naranjo Sr. did on the job site. Given that Luperio Naranjo Sr.'s job responsibility was principally to further the defendants' fraudulent scheme, the wages he earned in the course of that work should not be deducted from the forfeiture.

It is not clear from their submissions whether they are requesting a hearing and, if so, what additional evidence they would present to carry their burden. In the absence of any additional evidence from the Naranjos, forfeiture in the amount of $519,997.46 should be imposed. Further, the Court should not order a hearing absent a proffer from the Naranjos regarding what additional evidence they would present to carry their burden.

## C. The Court Should Impose Both Forfeiture And Restitution

The Naranjos finally argue that "[i]f the Court finds that the Naranjos owe any *restitution*, the amount of restitution should be set off against the forfeiture amount." (Docket Entry 55 at 6 (emphasis in original)). But there is no impediment to the imposition of both a forfeiture order and a restitution order. "These remedies are authorized by separate statutes, and their simultaneous imposition offends no constitutional provision." *United States* v. *Kalish*, 626 F.3d 165, 169 (2d Cir. 2010).

The Naranjos argue that "the Second Circuit has . . . suggested that there are circumstances where the forfeiture amount

11

should be reduced by the restitution payments." (Docket Entry 55 at 6). But the applicable precedent states, to the contrary, that "where restitution and forfeiture are both authorized by law, the decision to pursue both concurrently is committed to the government, not to the courts." *United States* v. *Torres*, 703 F.3d 194, 196 (2d Cir. 2012). Further, the Second Circuit has made clear that as far as the Court is concerned, "orders of forfeiture and restitution" are "mandatory under the statutes applicable here." *Id.* at 204 (citing 28 U.S.C. § 2461(c) ("If the defendant is convicted of the offense giving rise to the forfeiture, the court *shall order* the forfeiture of the property as part of the sentence in the criminal case[.]" (emphasis supplied by *Torres*)); 18 U.S.C. § 3663A(a)(1) ("the court *shall* order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense" (emphasis supplied by *Torres*))). Accordingly, both forfeiture and restitution should be imposed.

The cases the Naranjos cite do not alter these principles. The first case the Naranjos cite, *United States* v. *Bengis*, confirms that the decision of whether to make such a reduction is for the Government, and not for the Court. *See* 631 F.3d 33, 41 (2d Cir. 2011) ("We note in passing . . . that to the extent that a restitution award for South Africa that is derived from the market value of the illegally harvested lobsters might be duplicative of

the sums that defendants have already forfeited to the United States, *the government may exercise its discretion* to transfer the forfeited funds to South Africa, in order to reduce the restitution award by the amount defendants have already forfeited." (emphasis added)). The other case the Naranjos cite, *Kalish*, suggests that where a defendant has already paid restitution, this might reduce the amount of ill-gotten gains subject to forfeiture in the defendant's possession. 626 F.3d at 170. But the Second Circuit ultimately did not express any opinion on this issue, because no restitution had actually been paid, just as no restitution has yet been paid here. *Id*. Accordingly, the Court should order both forfeiture and restitution, as required by the applicable statutes.

## CONCLUSION

The Court should impose restitution in the amount of $614,754.47 and forfeiture in the amount of $519,997.46. The Government has included a proposed restitution order and two proposed amended forfeiture orders. To the extent the Naranjos request a hearing, the Court should first require a proffer regarding what evidence they intend to present.[2]

Dated:      New York, New York
            May 29, 2014

                        Respectfully submitted,

                        PREET BHARARA
                        United States Attorney

            By:      _____/s_____
                        Brian A. Jacobs/Brent S. Wible
                        Assistant United States Attorneys
                        Tel.: (212) 637-2512/2307

---

[2] The Government further requests that the Court terminate Brent Wible's appearance and remove him from the case, given that he is leaving the United States Attorney's Office. A proposed order is enclosed.

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA           **Order of Restitution**

           v.           **S1 13 Cr. 351 (JSR)**

JOVER NARANJO, and
LUPERIO NARANJO, SR.,

         *Defendants.*
------------------------------X


    Upon the application of the United States of America, by
its attorney, Preet Bharara, United States Attorney for the
Southern District of New York, Brian A. Jacobs and Brent S.
Wible, Assistant United States Attorneys, of counsel; the
Presentence Report; the defendants' convictions on all counts of
the above Superseding Indictment; and all other proceedings in
this case, it is hereby ORDERED that:

    1. **Amount of Restitution.** JOVER NARANJO and LUPERIO
NARANJO, SR., the defendants, shall pay restitution in the total
amount of $614,754.47 to the victims of the offenses charged in
Counts One through Six of the Superseding Indictment.  The
names, addresses, and specific amounts owed to the victims are
set forth in the Schedule of Victims attached hereto. Upon
advice of a change of address, the Clerk of the Court is
authorized to send payments to the new address without further

order of this Court.   Should the victims identified in the attached Schedule receive compensation for their losses in connection with a parallel administrative proceeding before the United States Department of Labor, the amount of restitution paid under this restitution order should be reduced by the amount of such compensation received, pursuant to 18 U.S.C. § 3664(j)(2).   In that event, JOVER NARANJO and LUPERIO NARANJO, SR., the defendants, will be required to pay restitution in such amount to the person or entity who provided such compensation, pursuant to 18 U.S.C. § 3664(j)(1).

2. **Sealing.**  Consistent with 18 U.S.C. §§3771(a)(8) & 3664(d)(4) and Federal Rule of Criminal Procedure 49.1, to protect the privacy interests of victims, the Schedule of Victims attached hereto shall be filed under seal, except that copies may be retained and used or disclosed by the Government, the Clerk's Office, and the Probation Department, as need be to effect and enforce this Order, without further order of this Court.

Dated:     New York, New York
           April ____, 2014


                              _____
                              HONORABLE JED S. RAKOFF
                              UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

       -v.-

JOVER NARANJO,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:    <u>AMENDED</u>
:    <u>PRELIMINARY ORDER OF</u>
:    <u>FORFEITURE/MONEY JUDGMENT</u>

:    S1 13 Cr. 351 (JSR)

:

:

WHEREAS, on or about September 10, 2013, JOVER NARANJO, (the "defendant"), was charged in a six-count Superseding Indictment, S1 13 Cr. 351 (JSR) (the "Indictment"), with mail fraud, in violation of in violation of Title 18, United States Code, Section 1341 and 2 (Counts One and Two); witness tampering, in violation of Title 18, United States Code, Section 1512(b)(1) and 2 (Counts Three and Four); falsifying documents with the intent to misrepresent the identities of certain employees working on the Ciena Project, the hours employees worked, and the wages employees were paid, in violation of Title 18, United States Code, Sections 1001 and 2 (Count Five); and identity theft, in violation of Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2 (Count Six);

WHEREAS, the Indictment included a forfeiture allegation as to Counts One and Two, seeking forfeiture to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, of any property, real and personal, constituting or derived from proceeds traceable to the offenses alleged in Counts One and Two of the Indictment;

WHEREAS, on or about November 22, 2013, the defendant was found guilty following a jury trial, as to Counts One through Six of the aforementioned Indictment;

WHEREAS, on April 9, 2014, the defendant was sentenced and ordered, pursuant to Rule 32.2(b)(2)(C) of the Federal Rules of Criminal Procedure, to forfeit an amount of money in United States currency to be calculated no later than June 2, 2014 (the "Calculated Amount"), for which he is jointly and severally liable with his co-conspirator, representing the amount of proceeds the defendant obtained directly or indirectly as a result of the violation alleged in Counts One and Two of the Indictment;

WHEREAS, this Court entered an Order dated April 11, 2014, providing that once the Calculated Amount is determined, the Court would enter an amended Order, pursuant to Rule 32.2(b)(2)(C)(iii) and Rule 32.2(e)(l) of the Federal Rules of Criminal Procedure;

WHEREAS, this Court has now determined that the Calculated Amount is $519,997.46;

NOW THEREFORE IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.    As a result of the offenses charged in Counts One and Two of the Indictment, to which the defendant was found guilty, a joint and several money judgment in the amount of $519,997.46 in United States currency (the "Money Judgment") shall be entered against the defendant.

2.    Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Preliminary Order of Forfeiture/Money Judgment is final as to the defendant JOVER NARANJO, upon entry of this Preliminary Order of Forfeiture/Money Judgment, and shall be deemed part of the sentence of the defendant, and shall be included in the judgment of convictions therewith.

3.    All payments on the outstanding money judgment shall be made by postal

money order, bank or certified check, made payable, in this instance to the United States Marshals Service, and delivered by mail to the United States Attorney's Office, Southern District of New York, Attn: Money Laundering and Asset Forfeiture Unit, One St. Andrew's Plaza, New York, New York 10007 and shall indicate the defendant's name and case number.

        4.    Upon execution of this Preliminary Order of Forfeiture/Money Judgment, and pursuant to Title 21, United States Code, Section 853, the United States Marshals Service shall be authorized to deposit the payments on the Money Judgment in the Assets Forfeiture Fund, and the United States shall have clear title to such forfeited property.

        5.    Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, upon entry of this Preliminary Order of Forfeiture/Money Judgment, the United States Attorney's Office is authorized to conduct any discovery needed to identify, locate or dispose of forfeitable property, including depositions, interrogatories, requests for production of documents and the issuance of subpoenas, pursuant to Rule 45 of the Federal Rules of Civil Procedure.

        6.    The Court shall retain jurisdiction to enforce this Preliminary Order of Forfeiture/Money Judgment, and to amend it as necessary, pursuant to Rule 32.2 (e) of the Federal Rule of Criminal Procedure.

7.      The Clerk of the Court shall forward three certified copies of this

Preliminary Order of Forfeiture/Money Judgment to Assistant United States Attorney Sharon

Cohen Levin, Chief of the Money Laundering and Asset Forfeiture Unit, United States Attorney's

Office, One St. Andrew's Plaza, New York, New York 10007.

Dated: New York, New York
       May __, 2014


SO ORDERED:


_____
HONORABLE JED S. RAKOFF
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| UNITED STATES OF AMERICA | : |
|  |  |
| -v.- | : |
|  |  |
| LUPERIO NARANJO, SR., | : |
|  |  |
|  | : |
|  |  |
| Defendant. | : |

AMENDED
PRELIMINARY ORDER OF
FORFEITURE/MONEY JUDGMENT

S1 13 Cr. 351 (JSR)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WHEREAS, on or about September 10, 2013, LUPERIO NARANJO, SR., (the "defendant"), was charged in a six-count Superseding Indictment, S1 13 Cr. 351 (JSR) (the "Indictment"), with mail fraud, in violation of in violation of Title 18, United States Code, Section 1341 and 2 (Counts One and Two); witness tampering, in violation of Title 18, United States Code, Section 1512(b)(1) and 2 (Counts Three and Four); and identity theft, in violation of Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2 (Count Six);

WHEREAS, the Indictment included a forfeiture allegation as to Counts One and Two, seeking forfeiture to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, of any property, real and personal, constituting or derived from proceeds traceable to the offenses alleged in Counts One and Two of the Indictment;

WHEREAS, on or about November 22, 2013, the defendant was found guilty following a jury trial, as to Counts One through Four and Count Six of the aforementioned Indictment;

WHEREAS, on April 9, 2014, the defendant was sentenced and ordered, pursuant to Rule 32.2(b)(2)(C) of the Federal Rules of Criminal Procedure, to forfeit an amount of money in United States currency to be calculated no later than June 2, 2014 (the "Calculated Amount"), for which he is jointly and severally liable with his co-conspirator, representing the amount of proceeds the defendant obtained directly or indirectly as a result of the violation alleged in Counts One and Two of the Indictment;

WHEREAS, this Court entered an Order dated April 11, 2014, providing that once the Calculated Amount is determined, the Court would enter an amended Order, pursuant to Rule 32.2(b)(2)(C)(iii) and Rule 32.2(e)(l) of the Federal Rules of Criminal Procedure;

WHEREAS, this Court has now determined that the Calculated Amount is $519,997.46;

NOW THEREFORE IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.      As a result of the offenses charged in Counts One and Two of the Indictment, to which the defendant was found guilty, a joint and several money judgment in the amount of $519,997.46 in United States currency (the "Money Judgment") shall be entered against the defendant.

2.      Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Preliminary Order of Forfeiture/Money Judgment is final as to the defendant LUPERIO NARANJO, SR., upon entry of this Preliminary Order of Forfeiture/Money Judgment, and shall be deemed part of the sentence of the defendant, and shall be included in the judgment of convictions therewith.

3.      All payments on the outstanding money judgment shall be made by postal

money order, bank or certified check, made payable, in this instance to the United States Marshals Service, and delivered by mail to the United States Attorney's Office, Southern District of New York, Attn: Money Laundering and Asset Forfeiture Unit, One St. Andrew's Plaza, New York, New York 10007 and shall indicate the defendant's name and case number.

       4.    Upon execution of this Preliminary Order of Forfeiture/Money Judgment, and pursuant to Title 21, United States Code, Section 853, the United States Marshals Service shall be authorized to deposit the payments on the Money Judgment in the Assets Forfeiture Fund, and the United States shall have clear title to such forfeited property.

       5.    Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, upon entry of this Preliminary Order of Forfeiture/Money Judgment, the United States Attorney's Office is authorized to conduct any discovery needed to identify, locate or dispose of forfeitable property, including depositions, interrogatories, requests for production of documents and the issuance of subpoenas, pursuant to Rule 45 of the Federal Rules of Civil Procedure.

       6.    The Court shall retain jurisdiction to enforce this Preliminary Order of Forfeiture/Money Judgment, and to amend it as necessary, pursuant to Rule 32.2 (e) of the Federal Rule of Criminal Procedure.

7.      The Clerk of the Court shall forward three certified copies of this

Preliminary Order of Forfeiture/Money Judgment to Assistant United States Attorney Sharon

Cohen Levin, Chief of the Money Laundering and Asset Forfeiture Unit, United States Attorney's

Office, One St. Andrew's Plaza, New York, New York 10007.

Dated: New York, New York
       May __, 2014


                        SO ORDERED:


                        _____
                        HONORABLE JED S. RAKOFF
                        UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------X

UNITED STATES OF AMERICA

                v.                 S1 13 Cr. 351 (JSR)

JOVER NARANJO, and
LUPERIO NARANJO, SR.,

               *Defendants.*

------------------------------X

     Upon the application of the United States of America, by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, Brian A. Jacobs and Brent S. Wible, Assistant United States Attorneys, of counsel, it is hereby ORDERED that the Clerk of Court is directed to terminate Brent S. Wible's appearance and remove him from the case.

Dated:    New York, New York
           _____, 2014

                        _____
                        HONORABLE JED S. RAKOFF
                        UNITED STATES DISTRICT JUDGE