USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___2/26/21___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOVER NARANJO,

     Petitioner,

  -against-

UNITED STATES OF AMERICA,

     Respondents.

17-CV-9573 (JSR) (BCM)

13-CR-351 (JSR)

**REPORT AND RECOMMENDATION
TO THE HON. JED S. RAKOFF**

**BARBARA MOSES, United States Magistrate Judge.**

  Petitioner Jover Naranjo, proceeding *pro se*, filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his 72-month sentence, imposed on April 9, 2014, after he was convicted by a jury in this District of conspiracy to commit mail fraud, mail fraud, conspiracy to commit witness tampering, witness tampering, making false statements, and aggravated identity theft. Pet. (Dkt. No. 1 at ECF pages 1-12) at 1; Judgment (13-CR-351 Dkt. No. 47) at 3.[1] On April 6, 2016, the judgment was affirmed on appeal. *United States v. Naranjo*, 645 F. App'x 50 (2d Cir. 2016) (summary order).

  Petitioner asserts that he was denied his Sixth Amendment right to the effective assistance of counsel throughout the pre-trial, trial and sentencing proceedings in his criminal case, because his attorney, Xavier R. Donaldson: (1) failed to properly advise petitioner about a plea offer that petitioner rejected, *see* Pet. Br. (Dkt. No. 1 at ECF pages 13-73) at 18-23; (2) failed to articulate a "cogent argument" for dismissal of the aggravated identity theft charge in his Fed. R. Crim. P. 29 motion, *id*. at 24-31; (3) failed to object to the jury instruction as to the aggravated identity theft charge, *id*. at 31-39; (4) failed to object to the introduction of portions of petitioner's prior testimony in an administrative proceeding before the Department of Labor (DOL) and failed to

---

[1] Citations to "Dkt. No. __" are to filings in No. 17-CV-9573. Citations to "13-CR-351 Dkt. No. __" are to filings in the underlying criminal case, No. 13-CR-351.

request a *Kastigar* hearing, *id*. at 40-44; (5) failed to request a *Fatico* hearing to challenge the loss amount for restitution and forfeiture, *id*. at 45-47; (6) failed to object to a 2-point sentencing enhancement for obstruction of justice, *id.* at 47-48; (7) failed to make "the required disparity argument" at sentencing, *id*. at 48-49; and (8) failed to object to an "illegal" restitution order. *Id*. at 49-50. Additionally, petitioner accuses the government of violating his Fifth Amendment rights and committing prosecutorial misconduct by (9) using his DOL testimony against him, *id*. at 40-43, and (10) withholding unspecified *Brady* material. *Id*. at 51-58. For the reasons that follow, I recommend, respectfully, that petitioner's motion be denied.

## I.    BACKGROUND

### A.    Factual Background

Petitioner owned and operated a demolition company called Enviro and Demo Masters, Inc. (Enviro), which, as summarized by the Second Circuit, "systematically underpaid its workers – primarily undocumented immigrants – in violation of federal law." *Naranjo*, 645 F. App'x at 52. In 2009, Enviro was hired to work on a construction project, known as the Ciena Project, on East 100th Street in New York, New York. Trial Transcript (Tr.) (13-CR-351 Dkt. Nos. 30, 32, 34, 36, 38, 40) 28. Lettire Construction Corporation (Lettire), the general contractor for the Ciena Project, hired Enviro to perform demolition work. Tr. 6, 28. Luperio Naranjo, Sr. (Luperio), petitioner's father and co-defendant, worked as Enviro's supervisor on the Ciena Project. Tr. 37, 42.

Enviro's underpayment of its workers led to criminal proceedings because the Ciena Project was governed by the Davis-Bacon Act, 40 U.S.C. § 3142 *et seq*., which requires that contractors and subcontractors pay their workers the prevailing wage, as established by the Secretary of Labor, as a condition for receiving federal funding for the project. Tr. 26. As relevant here, demolition workers were supposed to receive a total of approximately $49 per hour, and workers who carted

debris out to the street were supposed to receive a total of approximately $33 per hour. The Naranjos paid their workers only $13 per hour, and did not provide benefits or pay overtime. Tr. 45-46, 89, 127, 186-87, 224-25.

Because the Ciena Project was a Davis-Bacon Act project, the Naranjos were required to submit certified payroll documents to the New York City Department of Housing Preservation and Development (HPD) and the United States DOL. Tr. 451-52. They did so by giving those payroll documents to Lettire, which then mailed them to HPD and DOL. Tr. 453. To avoid detection of their underpayment of wages, petitioner and Luperio instructed workers to sign into the jobsite under aliases and hide from investigators, forged employees' names on timesheets, fabricated checks to make it appear that they were paying the prevailing wage, instructed workers to lie to investigators about their working hours and wages, and fired workers who spoke to investigators or refused to sign false documents. Tr. 46-47, 102-03, 124, 130, 190-91, 230, 275. Additionally, the Naranjos filed "false payroll documents that used the names of friends and family members" who did not actually work on the Ciena Project "instead of the workers' real names." *Naranjo*, 645 F. App'x at 52.

### B.     Indictment and Plea Offer

The Naranjos were indicted on May 13, 2013. The original Indictment (13-CR-351 Dkt. No. 12) contained four counts, all asserted against both Jover and Luperio Naranjo. Count I charged petitioner and his father with conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349. Count II charged them with mail fraud in violation of 18 U.S.C. §§ 1341 and 2. Count III charged them with conspiracy to commit witness tampering in violation of 18 U.S.C. § 1512(k). Count IV charged them with witness tampering in violation of 18 U.S.C. §§ 1512(b)(1) and 2. None of these counts carried a mandatory minimum sentence.

After lengthy plea negotiations, the government made a formal plea offer to petitioner dated September 9, 2013. In exchange for a guilty plea to Count II (mail fraud), the government offered to dismiss all remaining counts. Prop. Plea (Dkt. No. 1 at ECF pages 75-81; Dkt. No. 12-1) at 1. The stipulated Guidelines range in the proposed plea agreement was 33 to 41 months' imprisonment. *Id.* at 3. Petitioner would also have been required to admit to the forfeiture allegation in the Indictment with respect to Count II and forfeit $656,646.93 pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 3461, representing "the amount of proceeds traceable to the offense charged" in that count. *Id.* at 2. Petitioner rejected the plea offer.

On September 10, 2013, the government filed a Superseding Indictment (13-CR-351 Dkt. No. 18) containing six counts. Counts I through IV were unchanged. Count V charged petitioner with making false statements in violation of 18 U.S.C. §§ 1001 and 2. Count VI charged petitioner and Luperio with aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1), 1028A(b), and 2. Count VI carried a mandatory minimum sentence of two years, to be served consecutively with any other term of imprisonment. 28 U.S.C. §§ 1028A(a)(1), (b)(2).

### C.    Conviction and Sentence

On November 22, 2013, petitioner was convicted, following his jury trial, on all counts of the Superseding Indictment. *See* Judgment at 1-2; *Naranjo*, 645 F. App'x at 51. On April 9, 2014, during petitioner's sentencing hearing, his counsel objected (as he had in his written pre-sentence submission) to the Probation Office's Guidelines calculation, which assigned petitioner a total offense level of 25, on the ground that the government had not shown that the loss amount was over $400,000 and therefore the offense level should have been 23. Sentencing Tr. (13-CR-351 Dkt. No. 53) at 3-4; *see also* Sentencing Sub. (13-CR-351 Dkt. No. 43) at 1-2, 7. Judge Rakoff rejected that argument, agreeing with the Probation Office that the offense level was 25 and

therefore that the Guidelines range for petitioner was "57 months on Counts One through Five, to be followed by the mandatory two years or 24 months on Count Six." Sentencing Tr. at 4. He noted however, that in his view (as previously expressed during "a thousand other sentencings"), the Guidelines range was "totally artificial and has little or no rationality to commend itself." *Id*. Judge Rakoff then gave petitioner a below-Guidelines sentence of 48 months' imprisonment on Counts I–V, "to be concurrent between those counts," and 24 months' imprisonment on Count VI, "which are consecutive to the four years on the first five counts, for a total sentence of 72 months," followed by three years of supervised release. *Id*. at 15; *see also* Judgment at 3. When the subject of the loss amount arose again, a few minutes later, Judge Rakoff commented that even if counsel could convince him that the loss amount was under $400,000 (and thus that petitioner's total offense level was 23 rather than 25), "[i]t would not change my sentence so far as prison time is concerned one bit." Sentencing Tr. at 21.

With respect to the $656,646.93 forfeiture amount sought by the government, attorney Donaldson argued (as he had in his pre-sentence submission) that the figure was too high. Sentencing Tr. at 17; Sentencing Sub. at 1. The Court thereupon agreed to review additional information before determining the forfeiture amount. Sentencing Tr. at 35.

On April 17, 2014, Judge Rakoff issued a Preliminary Order of Forfeiture/Money Judgment (13-CR-351 Dkt. No. 45), noting that the forfeiture amount had not yet been determined. The next day, attorney Lloyd Epstein appeared for petitioner in place of attorney Donaldson. (13-CR-351 Dkt. No. 51.) On May 15, 2014, acting through his new counsel, petitioner filed a letter-brief arguing that the maximum amount the Court could order as forfeiture was $35,550.33. (13-CR-351 Dkt. No. 58.) On July 7, 2017, Judge Rakoff issued an Order of Restitution in the amount of $614,754.47 (13-CR-351 Dkt. No. 60) and an Amended Preliminary Order of Forfeiture/Money

Judgment in the amount of $519,997.46. (13-CR-351 Dkt. No. 62.) On May 28, 2015, after petitioner filed a motion seeking reconsideration and an evidentiary hearing (13-CR-351 Dkt. No. 66), Judge Rakoff issued a Second Amended Preliminary Order of Forfeiture/Money Judgment in the reduced amount of $296,943.42. (13-CR-351 Dkt. No. 74.)

### D. Post-Conviction Proceedings

#### 1. Petitioner's Direct Appeal

In their direct appeal, petitioner (represented by attorney Epstein) and Luperio argued principally that "they did not commit aggravated identity theft under 18 U.S.C. § 1028A and their convictions should be reversed because the government failed to prove that 1) they used another person's identity by pretending to be that person or received benefits otherwise intended for that person, and 2) they used another person's identity without that individual's consent to the unlawful use." *Naranjo*, 645 F. App'x at 51. Although the issue was framed as a challenge to the sufficiency of the evidence, the Second Circuit treated it as a claim that the trial judge erred when he "instructed the jury that, to find defendants guilty under § 1028A, the government had to prove that they 'used, transferred or possessed the means of identification in connection' with the substantive offense, and that defendants acted 'without lawful authority,' that is, used the identification 'without the consent or knowledge of the person' or used 'the identification in furtherance of a crime even with the person's consent.'" *Id.* at 52.

Noting that neither defendant objected to the jury instructions below, the Court of Appeals reviewed the instructions for plain error and found none. *Naranjo*, 645 F. App'x at 52-52. The court noted, among other things, that there was "no binding precedent governing the issue of how § 1028A should be interpreted" in our Circuit, and that the "majority of other circuits that had considered the questions raised by defendants have adopted the government's interpretation," *id.* at 52; that is, that to secure a conviction under § 1028A the government is not required to prove

that the defendant impersonated another person or received another person's benefits, nor that the individuals whose names were "used" (here, the friends and family members whose names were placed on the false payroll documents submitted by petitioner and his father to HPD and DOL) "did not consent to the unlawful use of their identities." *Id.* at 52 n.2 (collecting cases). Rehearing was denied on September 8, 2016. Pet. Br. at 4; Order, *United States v. Naranjo*, No. 14-1348-cr (hereafter "*Naranjo Appeal Docket*"), ECF No. 201 (2d Cir. Sept. 8, 2015).

## 2. The § 2255 Motion

On December 2, 2017, petitioner filed his petition, his opening brief, and a declaration in which he attests that he turned down the proposed plea agreement because his defense attorney told him he had a "very winnable case," failed to explain that he faced a two-year mandatory minimum sentence on the aggravated identity theft count under § 1028A (which had not yet been charged), and further failed to explain that "based on the jury charge that the trial judge could and would give to the seated jurors, I could not win the trial" as to aggravated identity theft. Pet. Decl. (Dkt. No. 1 at ECF pages 83-84) ¶¶ 6-9. Had counsel told him the truth about these risks, he states, he "would have accepted the plea." *Id.* ¶¶ 6-7.

On April 5, 2018, the government filed its opposition brief, together with the affidavit of petitioner's trial counsel, who attests that he repeatedly urged his client to accept the plea offer; that he expressly warned petitioner on April 22, 2013, that the government sought to add an aggravated identity theft charge carrying a two-year mandatory minimum; that he repeated that warning on August 1, 2013, at which point he also told his client that "we have no real defense"; that on August 29, 2013, he and counsel for Luperio met with both defendants, advised them not to go to trial, and explained again about the mandatory minimum; and that he gave the same advice to petitioner on September 5, 2013, in a meeting, and on September 8, 2013, via email. Donaldson Aff. (Dkt. No. 12-2) ¶¶ 7-13, 16. According to counsel, petitioner acknowledged that he would

likely lose the case but steadfastly insisted on going to trial, at one point stating, "I am not innocent, but I don't like being bullied, you have to fight." *Id.* ¶¶ 10, 11.

In his reply brief, filed on July 11, 2018, petitioner articulates a new explanation for his plea decision: that his "primary concern in the plea process" was "financial." Pet. Reply Br. (Dkt. No. 14) at 4. Noting that Judge Rakoff ultimately reduced the forfeiture amount to "$276,000 [sic], which was $375,000 less than the amount the Government claimed was proper," *id.*, petitioner asserts that this was the reason he turned down that plea offer. *Id.* at 6 ("an accurate forfeiture amount was the motivating force for Jover"). Petitioner also blames his trial counsel's "poor performance" for Judge Rakoff's initial calculation of "an incorrect forfeiture number." *Id.*[2]

Petitioner has been released from prison but remains subject to post-release supervision.

## II. DISCUSSION

### A. Timeliness

Subject to certain exceptions not applicable here, claims pursuant to § 2255 must be brought within one year from the date of the final conviction. 28 U.S.C. § 2255(f). "[A] judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction"; that is, 90 days after the decision of the Court of Appeals. *Clay v. United States*, 537 U.S. 522, 525 (2003). Petitions for rehearing, if timely presented to the Court of Appeals, toll the start of the period in which a petition for certiorari must be sought until rehearing is denied or a new judgment is entered on the rehearing. *Missouri v. Jenkins*, 495 U.S. 33, 45 (1990). In this case, the Second Circuit denied rehearing on September 8, 2016, rendering the judgment of conviction final 90 days later, on December 7, 2016. Thus,

---

[2] Luperio Naranjo also filed a § 2255 motion. It was unsuccessful. *See Naranjo v. United States*, 2020 WL 174072 (S.D.N.Y. Jan. 13, 2020).

petitioner's time to file his § 2255 motion expired the following year, on December 7, 2017. He timely filed his petition on December 2, 2017.

**B.    Legal Standards**

Pursuant to § 2255, a prisoner sentenced in federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" on the ground "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 USC § 2255(a). Relief under § 2255 is only available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

"A § 2255 petition may not be used as a substitute for direct appeal." *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007); *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993) (per curiam). Claims that could have been raised on direct appeal are deemed procedurally defaulted, and barred under § 2255, unless the petitioner shows: (1) "cause for failing to raise the claim at the appropriate time and prejudice from the alleged error," *Marone*, 10 F.3d at 67; or (2) "actual innocence." *Zhang*, 506 F.3d at 166. "Cause," for purposes of the cause-and-prejudice test, must be "something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in the original). "Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Id.* However, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding

under 28 U.S.C. § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also Zhang*, 506 F.3d at 166 (the procedural bar rule "does not generally apply to claims of ineffective assistance of counsel").

To establish that he was deprived of his Sixth Amendment right to the effective assistance of counsel at trial, a petitioner must show: (1) that his attorney's representation fell below an objective standard of reasonableness under prevailing professional norms; and (2) that he was prejudiced as a result of the purportedly defective conduct. *Strickland v. Washington*, 466 U.S. 668, 687-88, 693 (1984). In evaluating the first *Strickland* prong – whether a counsel's performance fell below an objective standard of reasonableness – judicial scrutiny must be "highly deferential," and the petitioner must overcome the "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (quoting *Strickland*, 466 U.S. at 689). "The record must demonstrate that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009).

To satisfy the second *Strickland* prong – the prejudice requirement – the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Courts in the Second Circuit generally "require some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2008) (quoting *United States v. Gordon*, 156 F.3d 376, 380-81 (2d Cir. 1998) (per curiam)). Noting that "the object of an ineffectiveness claim is not to grade counsel's performance," *Strickland*, 466 U.S. at 697, the Court

has stated, "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id*.

### C.    Merits

#### 1.    Counsel Was Not Constitutionally Ineffective During the Plea Discussions (Claim 1)

Petitioner argues that his counsel was ineffective during the plea negotiations in that he: (i) failed to explain the risks of going to trial, both as to the strength of the government's case and as to the threat of a mandatory minimum sentence under a new aggravated identity theft charge; and (ii) failed to obtain a more favorable plea offer. Pet. Br. at 20-23; Pet. Reply Br. at 2-6. In his declaration, as noted above, petitioner focuses on the first point, attesting that his counsel never explained that the government had an "overwhelming criminal case" and in fact told him that it was "very winnable." Pet. Decl. ¶ 5. He would have taken the plea, he attests, had he understood those risks. *Id*. ¶¶ 6-7. He does not mention the forfeiture amount. In his reply brief, however, petitioner insists that "financial concerns" were "particularly material" to him, and argues that had the offer been presented with a "decrease of $375,000" in the funds to be forfeited, he would have been "ecstatic with this result and accepted a plea" with a Guidelines range of 33 to 41 months' imprisonment, thereby – potentially – avoiding the 72-month sentence that he received after trial. Pet. Reply Br. at 3-6.

In the plea context, a criminal defense attorney "must communicate to the defendant the terms of the plea offer . . . and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000). An attorney's failure to communicate a plea offer to his client, or to advise his client adequately about the decision to plead guilty, may constitute constitutionally deficient performance. *See Lafler v. Cooper*, 566 U.S. 156,

163 (2012); *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999). Thus, to establish a Sixth Amendment violation in relation to a plea negotiation, the defendant must (1) show that his attorney in fact failed to communicate a plea offer, or failed to provide objectively reasonable advice about the decision to plead guilty; and (2) demonstrate prejudice by presenting "objective evidence," beyond his own hindsight declaration, that counsel's inaccurate advice substantially affected the outcome of the proceedings. *See Lafler*, 566 U.S. at 163 ("a defendant must show the outcome of the plea process would have been different with competent advice"); *Gordon*, 156 F.3d at 380-381 ("a defendant's self-serving, post-conviction testimony regarding his intent with respect to a plea offer" is insufficient by itself "to establish a 'reasonable probability' that he or she would have accepted the plea agreement," and thus "requires some further 'objective evidence' that a petitioner would have accepted a plea offer"). Where, as here, the defendant rejected a plea offer and stood trial, he "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . . that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 163-64.

Petitioner's ineffective assistance claim, to the extent it arises from the plea negotiations, fails both hurdles. First, petitioner has not shown that his attorney failed to provide objectively reasonable advice about the potential plea. In his declaration, petitioner attests in general terms – with no dates, no places, and very few specifics – that he rejected the plea offer because his experienced criminal defense attorney inexplicably failed to tell him about the strength of the government's evidence (which petitioner now agrees was "overwhelming," Pet. Br. at 22) and the

risk of an aggravated identity theft charge with a mandatory minimum. Pet. Decl. ¶¶ 3-8. Had he understood these risks, he tells the Court, he would have taken the plea. *Id*. ¶¶ 6-7.

These unsupported assertions, standing alone, would likely be insufficient to overcome *Strickland's* "strong presumption," 466 U.S. at 689, that counsel acted competently. *See Gordon v. Covlin*, 2020 WL 4504682, at *10 (E.D.N.Y. Aug. 5, 2020) (denying ineffective assistance claim as "meritless" where petitioner "only generally asserts, without support, that trial counsel failed to advise [him] of a plea offer and offer advice regarding a plea offer"). But here they do not stand alone. Petitioner's declaration is significantly undercut by his own reply brief – which tells a very different story, in which his "primary concern" during the plea negotiations was the proposed forfeiture amount, Pet. Reply Br. at 3-4 – and is starkly at odds with the more detailed affidavit of attorney Donaldson, who lists a series of dates on which he explained to his client that he was facing "possible Aggravated Identity Theft charges" with a two-year mandatory minimum sentence, Donaldson Aff. ¶¶ 7, 10, 11, 13; told him bluntly that "we have no real defense," *id*. ¶ 10; and repeatedly urged him not to go to trial. *Id*. ¶¶ 6, 11, 12, 13. Petitioner's co-defendant (and the co-defendant's attorney) were present for one such meeting, *id*. at 11; on another occasion, counsel communicated his advice in an email. *Id*. ¶ 13. On this record, the Court need not proceed to the second *Strickland* prong. *See Chang v. United States*, 250 F.3d 79, 81, 85-86 (2d Cir. 2001) (where *habeas* record included a "detailed affidavit" from trial counsel that contradicted Chang's "improbable" version of his interactions with counsel, court was warranted in dismissing petition without live testimony or analysis of the prejudice prong); *Riggi v. United States*, 2007 WL 2245595, at *1 (S.D.N.Y. Aug. 6, 2007) (Rakoff, J.) (dismissing § 2255 petition where the "vague and self-serving allegations" in petitioner's affidavit were "contradicted by the detailed, specific affidavit of petitioner's counsel" and therefore not "credible").

Even assuming, *arguendo*, that petitioner could establish that his trial counsel gave him inadequate advice, he offers no evidence beyond his own "post-conviction testimony regarding his intent," *Gordon*, 156 F.32d at 380-81, to demonstrate that had he understood the risks of losing at trial he would have accepted the government's offer *and* would have been sentenced to less than 72 months. Here too, petitioner's declaration is not only conclusory and "self-serving," *id.*; it is in tension with his reply brief, which insists that the real sticking point was the proposed forfeiture amount of $656,646.93 – and that if only the government had been willing to reduce that figure to the sum ultimately mandated by Judge Rakoff ($296,934.42), he would have been "ecstatic with this result and accepted a plea" with a stipulated Guidelines range of 31 to 44 months. Pet. Reply Br. at 5-6.[3]

Petitioner's revised prejudice theory fails for the additional reason that it rests upon the presumption that he was "entitled to a better plea bargain" than the one he was offered, which is "not a basis upon which habeas relief can be granted." *Suarez v. United States*, 2016 WL 3432464, at *5 (S.D.N.Y. June 16, 2016). Where a petitioner claims that he would have accepted "a better deal" had his counsel only negotiated one, it is that petitioner's burden to show that "the hypothetical plea would have materialized." *Williams v. United States*, 2012 WL 1116403, at *11 (E.D.N.Y. Mar. 30, 2012) (denying ineffective assistance claim where petitioner failed to make that "requisite threshold showing"); *see also Anthoulis v. New York,* 586 F. App'x 790, 792 (2d Cir. 2014) (finding no prejudice where petitioner's theory that he could have gotten a more favorable plea agreement was "based on mere speculation about how plea negotiations would have proceeded"); *Assadourian v. Brown*, 493 F. App'x 223, 225 (2d Cir. 2012) (finding no prejudice

---

[3] As the offer letter clearly explained, neither the parties' stipulation nor the Guidelines themselves would have bound Judge Rakoff, who could "impose any sentence, up to and including the statutory maximum sentence" of 20 years' imprisonment. Prop. Plea at 1, 4.

where "the prosecutor repeatedly asserted that the State had no intention of offering [petitioner] a plea to a sentence under ten years"); *Martin v. United States*, 2011 WL 676897, at *1 (E.D.N.Y. Feb. 16, 2011) (denying petition where petitioner "has offered no evidence or even argument that would permit an inference that his attorney could have obtained a better plea bargain").

Here, although Judge Rakoff ultimately reduced the forfeiture amount to $296,943.42, he did so only after multiple rounds of post-verdict briefing, during which the government argued doggedly that petitioner should forfeit $656,646.93, or, at a minimum, $519,997,46. (13-CR-351 Dkt. Nos. 44, 57, 71.) There is no indication in the record that the government would have agreed during pretrial plea negotiations to allow petitioner to plead guilty to Count II (with a stipulated Guidelines range of 31 to 44 months) *and* cut his forfeiture amount by more than half. As in *Anthoulis,* therefore, petitioner's prejudice theory is "based on mere speculation about how plea negotiations would have proceeded." 586 F. App'x at 792.

### 2. Counsel Was Not Constitutionally Ineffective in Failing to Challenge the Government's Interpretation of § 1028A (Claims 2 and 3)

The aggravated identity theft statute, 28 U.S.C. § 1028A states in relevant part:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1). Mail fraud is included in the felonies enumerated in subsection (c) of the statute. 18 U.S.C. § 1028A(c)(5).

Petitioner argues that his counsel was ineffective in failing to argue – either in his oral Rule 29 motion (Tr. 484) or in an objection to the Court's jury instructions – that he could not be convicted of aggravated identity theft for using the names of non-employee friends and family members in the falsified payroll documents that he submitted to HPD and DOL because the statute requires proof that he (i) sought to "pass himself off" as another person or obtain benefits to which

the other person was entitled, and (ii) used another person's name without that person's "consent." Pet. Br. at 27-39.[4] Petitioner notes that three circuits have so held, in whole or in part – albeit one of them not until 2017.[5] He neglects to mention that as of the date of his trial eight circuits had gone the other way, in whole or in part,[6] and the Second Circuit had not spoken. *See Naranjo*, 645 F. App'x at 52. It still has not.

On direct appeal, petitioner challenged the jury instructions on the same substantive grounds, and lost on plain error review. As the Second Circuit explained:

> "For plain error, we must find (1) error, (2) that is plain, and (3) that affects substantial rights; if these three conditions are met, we have discretion to notice the forfeited error only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."

*Naranjo*, 645 F. App'x at 52 (quoting *United States v. Dorvee,* 616 F.3d 174, 180 n.2 (2d Cir. 2010). In petitioner's case, the appellate court concluded:

---

[4] The District Court instructed the jury that with respect to the aggravated identity theft charge the government was required to prove that petitioner: (1) "possessed the personal identification information of another person"; (2) "used the information to help commit one or more of the substantive mail fraud, mail fraud conspiracy or false statement offenses"; and (3) "did so knowingly and intentionally and without lawful authority." (Tr. 618.) As to the second element, Judge Rakoff instructed the jury that "[i]t is sufficient if you find beyond a reasonable doubt that the defendant you are considering used, transferred or possessed the means of identification in connection with any one of those three crimes." (Tr. 618-19.) As to the third element, the trial judge explained that "a defendant acts without lawful authority either when he uses a means of identification without the consent or knowledge of the person or when he uses the identification in furtherance of a crime even with the person's consent." (Tr. 619.) Neither defendant objected.

[5] *See United States v. Berroa*, 856 F.3d 141, 156-57 (1st Cir. 2017); *United States v. Medlock*, 792 F.3d 700 (6th Cir. 2015); *United States v. Miller*, 734 F.3d 530 (6th Cir. 2013); *United States v. Spears*, 729 F.3d 753 (7th Cir. 2013) (en banc).

[6] *See United States v. Osuna–Alvarez*, 788 F.3d 1183, 1185 (9th Cir.), *cert. denied*, 577 U.S. 917 (2015); *United States v. Reynolds*, 710 F.3d 434, 436 (D.C. Cir. 2013); *United States v. Lumbard*, 706 F.3d 716, 725 (6th Cir. 2013); *United States v. Ozuna-Cabrera*, 663 F.3d 496, 498-99 (1st Cir. 2011); *United States v. Retana*, 641 F.3d 272, 274 (8th Cir. 2011); *United States v. Abdelshafi*, 592 F.3d 602, 605–07 (4th Cir. 2010); *United States v. Hurtado*, 508 F.3d 603, 607 (11th Cir. 2007) *abrogated on other grounds by Flores–Figueroa v. United States*, 556 U.S. 646 (2009); *see also United States v. Carrion–Brito*, 362 F. App'x 267, 273 (3d Cir. 2010).

Because the majority of other circuits have concluded that § 1028A unambiguously includes the conduct at issue here, we cannot say that that any error was 'so egregious and obvious as to make the trial judge and prosecutor derelict in permitting it, despite the defendant's failure to object.' . . . The district court's decision to instruct the jury in a way that conforms with most circuits' interpretation of the statute was not plainly erroneous.

*Id.* at 53 (quoting *United States v. Brown,* 352 F.3d 654, 664-65 (2d Cir. 2003)).

### a. Objective Standard of Reasonableness

In order to meet the first prong of the *Strickland* test as to § 1028A, petitioner must show that his attorney's failure to object to an interpretation of § 1028A that a majority of circuits had adopted (and that our Circuit had not addressed) was not merely an error, but an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Wilson*, 570 F.3d at 502. This is precisely the question raised by Luperio in his § 2255 petition and rejected, in that case, by this Court. As Magistrate Judge Cave explained, the fact that Luperio's counsel (like petitioner's counsel) "did not object to a charge that was legally correct under the majority interpretation of the statute does not fall below the objective standard of reasonableness as is required to prove that his counsel was constitutionally ineffective." *Naranjo v. United States*, 2019 WL 7568186, at *6 (S.D.N.Y. Dec. 16, 2019), *report and recommendation adopted*, 2020 WL 174072 (S.D.N.Y. Jan. 13, 2020). The same is true here.

### b. Prejudice

Petitioner's prejudice argument fails as well. As this Court explained when rejecting his co-defendant's identical claim:

In light of the Second Circuit's holding that the jury instructions did not constitute an error 'so egregious and erroneous' as to infect Naranjo's trial, he also cannot demonstrate the second prong of *Strickland*, *i.e.*, 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 466 U.S. at 688, 694. Naranjo provides no basis to support the conclusion that, (i) had his counsel properly objected, the District Court would have revised the instruction, or (ii) even if the same instruction had been given, the Second Circuit would have examined the charge under a *de novo*

> standard of review and would have followed the minority, as opposed to the
> majority, interpretation of Section 1028A to find the instruction defective.

*Naranjo v. United States*, 2019 WL 7568186, at *7 (footnote omitted). I note as well that, although

petitioner now suggests that his friends and family consented to the fraudulent use of their names

in the falsified payroll reports he submitted, *see* Pet. Br. at 28, the record contains no such evidence.

Thus, even assuming that counsel's failure to challenge the aggravated identity theft jury

instructions was an unprofessional error, petitioner has not demonstrated that the error "so upset

the adversarial balance between defense and prosecution that the trial was rendered unfair and the

verdict rendered suspect," *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Accordingly,

petitioner has not shown that his counsel's performance caused him constitutionally cognizable

prejudice.[7]

### 3. Counsel Was Not Constitutionally Ineffective in Failing to Object to the Introduction of Petitioner's Prior DOL Testimony or Request a *Kastigar* Hearing (Claim 4)

At trial, the government introduced – and read to the jury – portions of petitioner's

deposition testimony given in a prior administrative proceeding before the DOL. *See* Tr. 475-82.

According to petitioner, that testimony was both incriminating and "compelled," on pain of

"los[ing] his employment in public funded projects," and therefore was "immunized" under

*Kastigar v. United States*, 406 U.S. 441 (1972), meaning that it could not be used against him at

---

[7] In his habeas brief, petitioner argues that he is "actually innocent" of aggravated identity theft because did not impersonate anyone else or "act on someone else's behalf." Pet. Br. at 24. Neither the Supreme Court nor the Second Circuit has recognized a "freestanding" claim of actual innocence as a basis for habeas relief. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("[w]e have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"); *Flom v. United States*, 2021 WL 84230, at *6 (E.D.N.Y. Jan. 11, 2021) (collecting cases). Even if such a claim were cognizable, it would fail here because petitioner's actual innocence argument is bottomed on the same statutory interpretation issue that petitioner raised and lost on direct appeal.

his criminal trial, directly or indirectly, without violating his rights under the Fifth Amendment. Pet. Br. at 40-42.[8] Petitioner goes on to argue that his trial counsel rendered ineffective assistance by failing to object to the introduction of the DOL testimony or request a *Kastigar* hearing. Pet. Br. at 44; Pet. Reply Br. at 13. At such a hearing, the government would bear the burden of establishing that "all of the evidence it proposes to use [at trial] was derived from legitimate independent sources." *United States v. Allen*, 864 F.3d 63, 91 (2d Cir. 2017) (quoting *Kastigar*, 406 U.S. at 461-62).

In response, the government notes that petitioner has presented no evidentiary support (not even in his own declaration) for his assertion that his DOL testimony was "compelled," and points out that his co-defendant Luperio – who also sat for a DOL deposition – repeatedly invoked his Fifth Amendment rights and declined to answer numerous questions. Resp. Opp. Br. at 29-30; *id.* Ex. C (Dkt. No. 12-3). The government further contends that only a portion of petitioner's DOL deposition testimony was admitted (by stipulation), and that it was used only for the narrow purpose of showing that petitioner knew the "prevailing wages" that he was supposed to be paying his workers. Resp. Opp. Br. at 31-32; *see also* Tr. 590 (government's summation, pointing to prior

---

[8] Petitioner did not raise his Fifth Amendment claim on direct appeal. Nor did he raise the related allegation, made in this proceeding, that that government engaged in prosecutorial misconduct by compelling him to testify in the DOL proceeding and then using that testimony against him at his criminal trial. Pet. Br. at 40-43. Moreover, petitioner offers no explanation for why he did not raise these points on his direct appeal (during which he was represented by new counsel). Petitioner's Fifth Amendment/prosecutorial misconduct claim arising out of the use of his DOL testimony at trial (Claim 9) is therefore procedurally barred. *See Zhang*, 506 F.3d at 166; *United States v. Rodriguez*, 438 F. Supp. 2d 449, 456 (S.D.N.Y. 2006) ("While Rodriguez did not assert a Fifth Amendment claim on direct appeal, he could have done so, and so is procedurally defaulted from doing so on this § 2255 motion, no showing having been made of a sufficient cause for the failure or actual prejudice resulting from it."); *Morse v. United States*, 1997 WL 405195, at *2 (N.D.N.Y. July 15, 1997) (because petitioner's Fifth Amendment claim alleging that compelled testimony was improperly used against her at trial "was not raised on direct appeal, it will not be considered in a § 2255 motion unless the movant can show cause for failing to raise the issue, and prejudice resulting therefrom").

DOL testimony as evidence of knowledge). As to that issue, the government argues, the evidence was "cumulative," making any error harmless. Resp. Opp. Br. at 32-34; *see also* Tr. 591 (government's summation, pointing to the certified payrolls that petitioner signed as further evidence of knowledge).

In his reply brief, as additional support for his contention that his DOL testimony was compelled, petitioner points to a counseled civil action that he and Luperio filed in this Court on June 8, 2012 – after they gave deposition testimony in the DOL proceeding but prior to a DOL administrative hearing scheduled for later that month – seeking an emergency stay of the hearing pending the resolution of what was then a "parallel and substantially similar" criminal investigation in this District. *See* Pet. Reply Br. at 12; Order to Show Cause (OSC), *Naranjo v. Solis*, No. 12-CV-4482 (KBF) (hereafter "*Solis*"), Dkt. No. 2 (S.D.N.Y. June 8, 2012).[9]

Ordinarily, the Fifth Amendment is not self-executing; a witness must affirmatively invoke its protection. *Minnesota v. Murphy*, 465 U.S. 420, 434 (1984). Among the exceptions to this rule, however, are the "penalty cases," where "the state not only compelled an individual to appear and testify, but also sought to induce him to forgo the Fifth Amendment privilege by

---

[9] It is not clear why petitioner believes the *Solis* case is helpful to him on the compelled-testimony issue. Judge Forrest dismissed the case on June 11, 2012, for lack of subject matter jurisdiction, concluding that the decision of the DOL administrative law judge denying a self-stay of the agency proceeding was not a final agency action. *See* Order, *Solis*, Dkt. No. 6 (June 11, 2012). She adhered to that decision on reconsideration three days later. Endorsed Letter, *Solis*, Dkt. No. 9 (June 14, 2012). Petitioner did not appeal. Prior to the dismissal, in a brief in opposition to the Naranjos' OSC, the United States Attorney's Office, representing the Secretary of Labor, acknowledged the existence of the criminal investigation, which had not yet resulted in any indictments; noted that the target of such an investigation generally has no constitutional right to stay related civil proceedings (particularly pre-indictment); and argued that in this instance the Naranjos faced no irreparable harm because they were "free to testify at the [DOL] hearing, or invoke their Fifth Amendment rights, as they did when they were deposed." Def. Mem., *Solis*, Dkt. No. 7 (June 12, 2012), at 14. Nothing in the record in *Solis* refutes that point or supports petitioner's current claim that his DOL testimony was compelled.

threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.'" *Id.* (quoting *Lefkowitz v. Cunningham,* 431 U.S. 801, 806 (1977)). According to petitioner, his DOL deposition fell into this category, because "if he did not appear, he would face three years debarment from federal public employment." Pet. Br. at 40.

The government is correct that petitioner offers zero support – legal or evidentiary – for his assertion that he was compelled to incriminate himself in his DOL deposition for fear of being excluded from "federal public employment." Petitioner was not a federal employee. Even assuming, *arguendo*, that as a subcontractor working on a federally funded project he was compelled to "appear" for deposition, Pet. Br. at 40, that would not differentiate him from any other recipient of a subpoena, party to a civil lawsuit, or probationer, who may be required to "appear" but, once there, free to assert his Fifth Amendment rights.[10] Petitioner's co-defendant did just that, repeatedly, at his own DOL deposition. Resp. Opp. Br. Ex. C. Moreover, as the *Solis* record makes clear, it was petitioner himself who requested a hearing before the DOL. *See Powell* Decl., *Solis*, Dkt. No. 8 (June 12, 2012), Ex. A, at ECF pages 5-9 (Sept. 14, 2010 letter from petitioner to DOL, "formally" requesting a hearing before a DOL administrative law judge to dispute various "findings of the investigation," including the finding that he "submitted falsified statements of compliance").

Petitioner's criminal defense attorney was clearly aware of his client's "prior testimony, proffers, and statements," *see* Donaldson Aff. ¶ 16, including his DOL testimony, and believed

---

[10] *See*, *e.g*., *Murphy*, 465 U.S. at 436, 440 (holding that since Murphy's probation conditions "merely required him to appear and give testimony about matters relevant to his probationary status," but did not require him to "choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent," his disclosures to his probation officer were not "compelled incriminations" and could be used against him in a later criminal prosecution).

that it would be harmful at trial. *Id.* ¶¶ 15-16. That was one of the reasons he advised petitioner to accept the government's plea offer. *Id.* Nothing in the record now before me, however, casts doubt on counsel's view that there were "no meritorious methods" to keep that prior testimony "out of his trial," because it was not "compelled or involuntary." *Id.* ¶ 16. Counsel's failure to object or seek a *Kastigar* hearing therefore did not fall below the "objective standard of reasonableness" required by the Constitution. *Strickland*, 466 U.S. at 688; *see Harrington v. United States*, 689 F.3d 124, 130 (2d Cir. 2012) (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.1994)) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); *Rosa v. United States*, 170 F. Supp. 2d 388, 407 (S.D.N.Y. 2001) (counsel's failure to make a non-meritorious objection does not constitute ineffective assistance).

By the same token, since petitioner has not shown that his DOL testimony was compelled and immunized, his Fifth Amendment rights were not violated by its use in his criminal trial, and the government did not commit prosecutorial misconduct in using it. Thus, even if petitioner were not barred from asserting a direct Fifth Amendment/prosecutorial misconduct claim pursuant to § 2255, such a claim would fail on the merits. On this record, there is no need for the Court to consider whether the evidence was cumulative or the alleged error was harmless.

### 4. Counsel Was Not Constitutionally Ineffective with Respect to Petitioner's Sentence (Claims 5, 6, 7 and 8)

Petitioner advances a number of scatter-shot challenges to his counsel's conduct with respect to the custodial and non-custodial aspects of his sentence, including claims that counsel failed to request a *Fatico* hearing[11] to investigate the loss amount (for purposes of both restitution

---

[11] *See United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978). The purpose of a *Fatico* hearing is to permit "the prosecution and the defense [to] introduce evidence relating to the appropriate sentence," including the non-custodial aspects of that sentence. *United States v. Lohan,* 945 F.2d 1214, 1216 (2d Cir. 1991).

and forfeiture) (Claim 5); failed to object to a 2-point sentencing enhancement for obstruction of justice (Claim 6); failed to make an argument about sentence disparity (Claim 7); and failed to challenge the restitution order (Claim 8). Pet. Br. at 45-50.

<em>a.    Petitioner's Challenges to the Restitution and Forfeiture Orders<br/>are Improper under § 2255 and Meritless</em>

Section § 2255 may not be used to challenge non-custodial aspects of a criminal sentence, such as orders of restitution and forfeiture. *Kaminski v. United States*, 339 F.3d 84, 88-91 (2d Cir. 2003) (because "[h]abeas lies to allow attacks on wrongful custodies," federal courts lack subject matter jurisdiction to review orders of restitution pursuant to § 2255); *Lasher v. United States*, 2018 WL 3979596, at *9 (S.D.N.Y. Aug. 20, 2018) ("forfeiture orders may not be challenged by means of a § 2255 habeas petition"). Moreover, "couching the restitution issue as one based on ineffective assistance of counsel does not change the . . . analysis that bars the claim from being brought because it challenges a non-custodial order." *Edwards v. United States*, 2007 WL 2325933, at *4 (E.D.N.Y. Aug. 10, 2007); *see also Bimpeh v. United States*, 2008 WL 4861705, at *1 (S.D.N.Y. Nov. 10, 2008) (under *Kaminsky*, "a district court faced with a petitioner alleging ineffective assistance of counsel for failure to object to a restitution order [is] without subject matter jurisdiction to determine whether counsel was, in fact, ineffective"). Although the Second Circuit has left open the possibility that a restitution order could be so burdensome as to amount to a restraint on "liberty," reviewable pursuant to § 2255, *see Bimpeh*, 2008 WL 4861705, at *2, petitioner does not contend that the noncustodial portions of his sentence rise to that level. Consequently, petitioner's "challenge to his counsel's conduct with respect to the orders of restitution and forfeiture," like Luperio's identical challenge, "is not cognizable under Section 2255." *Naranjo v. United States*, 2019 WL 7568186, at *8.

Even if this Court could exercise subject-matter jurisdiction over Claims 5 and 8, relating to restitution and forfeiture, those claims would fail. Attorney Donaldson *did* challenge the government's calculation of the loss amount, both in writing, *see* Sentencing Sub. at 1-2, 7, and orally, during the sentencing hearing, at which point he specifically objected to the $656,646.93 forfeiture amount sought by the government as too high. Sentencing Tr. at 3-4, 17. As a result, Judge Rakoff agreed to review additional information before entering orders of restitution or forfeiture. *Id*. at 35. Taking advantage of that opportunity, petitioner's new counsel, attorney Epstein, submitted two rounds of detailed briefing, including affidavits and other evidentiary material, obviating any need for a *Fatico* hearing. After reviewing the evidence, Judge Rakoff rejected petitioner's challenges to the restitution amount, as did the Second Circuit.[12] However, he was persuaded to reduce the forfeiture amount to $519,997.46, and then – on reconsideration – to $296,943.42. *See United States v. Naranjo*, 2014 WL 3406902 (S.D.N.Y. July 7, 2014), *order vacated on reconsideration,* 2015 WL 2381322 (S.D.N.Y. May 13, 2015). This is the same sum that petitioner says he would have been "ecstatic" to accept as part of a pretrial plea bargain. Pet. Reply Br. at 5-6.

On this record, petitioner cannot establish that attorney Donaldson committed "unprofessional errors" in connection with the restitution and forfeiture orders. *Strickland*, 466 U.S. at 694.[13] Moreover, since petitioner's restitution arguments were "meritless," *Naranjo*, 645 F.

---

[12] On direct appeal, petitioner argued – as he does here – that Judge Rakoff improperly required him to pay restitution to a co-conspirator, Lettire. *Compare* Brief for Defendant-Appellant Jover Naranjo, *Naranjo Appeal Docket*, ECF No. 110 (Aug. 27, 2015) at 26-27 *with* Pet. Br. at 49-50. The Court of Appeals rejected that argument summarily as "without merit." *Naranjo*, 645 F. App'x at 53.

[13] Petitioner does not allege any unprofessional conduct by the attorney who litigated (and lost) the restitution issue after sentencing and on appeal. To the contrary: he claims that Judge Rakoff improperly ordered him to make restitution payments to a co-conspirator "as a result of the total incompetence of Attorney Donaldson." Pet. Br. at 50.

App'x at 53, and since he *succeeded* in reducing the forfeiture amount, he cannot show that "the result of the proceeding would have been different," *id.*, had his trial counsel formally requested a *Fatico* hearing or otherwise done more to "bring[ ] this matter to the attention of the Court." Pet. Br. at 46.

### b. The 2-Point Enhancement for Obstruction of Justice was Both Lawful and Inconsequential

In Claim 6, petitioner complains that the 2-point sentencing enhancement he received for obstruction of justice pursuant to § 3C1.1 of the Guidelines was "double counting," and that his trial counsel was constitutionally ineffective in failing to challenge the enhancement. Pet. Br. at 47-48. In *United States v. Fiore*, 381 F.3d 89, 95 (2d Cir. 2004), however, the court rejected a similar "double-counting" argument and affirmed the district court's application of the two-point enhancement to reflect the defendant's perjury. As noted above, an attorney's failure to make a non-meritorious objection cannot constitute ineffective assistance. *Harrington*, 689 F.3d at 130; *Rosa*, 170 F. Supp. 2d at 407.

Moreover, petitioner cannot show prejudice. Not only did he receive a below-Guidelines sentence, he received it from a judge who views the Guidelines as "totally artificial," with "little or no rationality," Sentencing Tr. at 4, and who told petitioner's counsel (in the context of another disputed 2-point enhancement) that even if petitioner's total offense level were 23 rather than 25, "[i]t would not change my sentence so far as prison time is concerned one bit." *Id.* at 21. On this record, petitioner cannot satisfy either *Strickland* prong.

### c. Petitioner Fails to Identify any Cognizable Disparity Argument

18 U.S.C. § 3553(a)(6) requires sentencing judges to consider, among other things, "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The Second Circuit has held that the "mandate to take into account

nationwide disparities under § 3553(a)(6) . . . is modest," and judges need only "be mindful of the general goal, however elusive, of national consistency." *United States v. Wills*, 476 F.3d 103, 110 (2d Cir. 2007). Section 3553(a)(6) does not require "that a judge must act as a social scientist and assess nationwide trends in sentencing with each new defendant." *Id.*

Petitioner argues in Claim 7 that his trial counsel was constitutionally ineffective in failing to "make the required disparity argument," namely, that he was "sentenced using an inflated advisory guideline range." Pet. Br. at 48-49. To the extent not wholly duplicative of Claim 6, this claim fails because petitioner provides no evidence of an unwarranted disparity between his sentence and the sentences given to similarly situated defendants nationwide. The fact that other circuits take a different view of the 2-point sentencing enhancement for obstruction (or, for that matter, a different view of any other legal issue affecting sentencing) cannot, standing alone, be the basis of a "disparity" argument. Moreover, as noted above, petitioner received a below-Guidelines sentence unaffected by the "inflated advisory guideline range" of which he complains. Once again, therefore, petitioner cannot satisfy either *Strickland* prong.

### 5.     Petitioner's *Brady* Claim (Claim 10) is Meritless

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To succeed on a *Brady* claim pursuant to § 2255, the petitioner must show that (1) the government suppressed favorable evidence, and (2) the evidence the government suppressed was material. *Pizzuti v. United States*, 809 F. Supp. 2d 164, 177 (S.D.N.Y. 2011). Moreover, if the *Brady* claim "could have been raised on direct appeal," it will be procedurally barred in a habeas proceeding. *Id.* at 180.

In his final claim, petitioner asserts that the government "had possession of substantial evidence that incriminated Lettire and exculpated Jover [Naranjo]," but "concealed" that evidence to his detriment. Pet. Br. at 56-57. According to petitioner, the concealed materials could have (among other things) helped him reduce his restitution obligation by showing that Lettire was "not a victim" of his crime. *Id*. at 58. Nowhere in his habeas papers, however, does petitioner actuallydescribe the "favorable evidence" that he believes the government concealed. Similarly, although he suggests that the government made knowing use of "false evidence," *id*. at 54, he does not identify that evidence or explain why it was false. Nor does he make any showing as to when he discovered the government's misconduct or why he did not raise his *Brady* claims on direct appeal.

Particularly in the face of "overwhelming" evidence of his guilt, Pet. Br. at 22, petitioner's vague and conclusory *Brady* allegations are wholly insufficient. *See United States v. Jean*, 2021 WL 75128, at *2 (S.D.N.Y. Jan. 8, 2021) (Chin, J.) ("this kind of conclusory assertion is routinely rejected"); *Skinner v. Duncan*, 2003 WL 21386032, at *25 & n.39 (S.D.N.Y. June 17, 2003) (dismissing "speculative" *Brady* claim unsupported by evidence and collecting similar cases in which "speculative," "conclusory," and "unsupported" *Brady* claims were dismissed).

## III.    CONCLUSION

"'[I]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the [§ 2255] motion' without holding an evidentiary hearing." *Lasher*, 2018 WL 3979596, at *10 (quoting *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)). Having carefully reviewed petitioner's motion, the attached exhibits, and the underlying records, I conclude that no relief is warranted in this action. I therefore recommend, respectfully, that the petition be DENIED.

The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to petitioner Jover Naranjo.

Dated: New York, New York
February 26, 2021

_____
**BARBARA MOSES**
**United States Magistrate Judge**

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Jed S. Rakoff at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Rakoff. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).